**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 06-4461**

———————

UNITED STATES OF AMERICA,

                                Plaintiff - Appellee,

        versus

CHARLES D. IZAC,

                                Defendant - Appellant.

———————

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Irene M. Keeley, Chief District Judge. (3:02-cr-00058-WCB)

———————

Argued: March 16, 2007                Decided: July 11, 2007

———————

Before MOTZ and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Fred Warren Bennett, BENNETT & BAIR, L.L.P., Greenbelt, Maryland, for Appellant. Paul Thomas Camilletti, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee. **ON BRIEF:** Gary E. Bair, BENNETT & BAIR, L.L.P., Greenbelt, Maryland, for Appellant. Rita R. Valdrini, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Charles D. Izac appeals from his conviction for possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and (e). Izac contends that the district court erred by (1) excluding evidence relevant to his defense of justification, (2) excluding his wife from the courtroom during jury selection, and (3) refusing to allow him to argue to the jury that the Government's failure to call a witness to testify constituted a basis for believing the witness's testimony would be unhelpful for the Government. As set forth below, we affirm.


I

At trial, the evidence tended to show that on November 7, 2001, Izac was involved in an incident with his neighbor, Christopher Billek. According to Izac, this incident occurred after he had filed a lawsuit against Billek and served process on him that day, causing Billek to confront him in response. During the confrontation, Billek yelled profanities at, and threatened to kill, Izac while advancing toward the fence separating Billek's and Izac's property. In addition, Billek screamed threats to burn down Izac's house and kill his dog. In response to Billek's threats, Izac emerged from his house and onto his deck. Seeing that Billek was armed with what appeared to be a rifle or shotgun, Izac quickly went inside his house and retrieved a .22 caliber rifle which his

2

wife had left inside a closet in the house for Izac's use should a confrontation with Billek occur. Izac reemerged onto the deck with the rifle in his possession and told Billek that he would kill him if he came over the fence. Billek then retreated into his house and telephoned the police, and Izac returned the rifle to his closet. At that point, Izac locked the doors to his house and went to the rear of his property, where he awaited the arrival of the police. After the police arrived, Izac surrendered the weapon to them.

The district court permitted Izac to present a justification defense; however, it excluded evidence describing a long-running feud between Izac and Billek, including evidence of threats and violence by Billek, which Izac contends would have bolstered the defense by demonstrating his state of mind and his fear of Billek. In excluding this evidence, the district court restricted Izac to the presentation of testimony regarding his confrontation with Billek on November 7, 2001.

The case was tried to a jury, with the Government arguing two theories in support of its case. First, the Government contended that Izac was in actual possession of the .22 rifle from the time he retrieved it from the closet until he returned it to the closet. Second, the Government argued that Izac constructively possessed the rifle during the period when the rifle was left in the closet for his use. The district court charged the jury that it could

convict Izac on either actual or constructive possession and that the defense of justification did not apply to the Government's constructive possession theory. The jury returned a general verdict of guilty, and Izac now appeals.

II

We review the district court's exclusion of evidence, its exclusion of Izac's wife from jury selection, and its exclusion of Izac's "missing witness" argument for abuse of discretion. United States v. Uzenski, 434 F.3d 690, 708 (4th Cir. 2006) (reviewing evidentiary rulings for abuse of discretion); United States v. Duncan, 598 F.2d 839, 865 n.25 (4th Cir. 1979) (noting district court's broad discretion over voir dire proceedings). We review de novo the legal question of whether Izac was entitled to present a justification defense. United States v. Perrin, 45 F.3d 869, 871 (4th Cir. 1995).

A.

Izac argues that the district court erred in excluding evidence of Billek's past threats and aggression, which Izac contends is relevant to establishing a justification defense. The Government, on the other hand, maintains that Izac was not entitled to a justification defense in the first place, rendering harmless any error relating to the exclusion of evidence.

4

To be entitled to a defense of justification, a defendant must produce evidence which would allow a reasonable factfinder to conclude that: (1) he was under an unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and (4) a direct causal relationship existed between the criminal action and the avoidance of the threatened harm. United States v. Crittendon, 883 F.2d 326, 330 (4th Cir. 1989). Of these elements, the third -- no reasonable legal alternative -- is the "keystone of the analysis." United States v. Singleton, 902 F.2d 471, 473 (6th Cir. 1990). In demonstrating that he had no reasonable legal alternative to violating the law, a defendant must show that "he had actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative." United States v. Gant, 691 F.2d 1159, 1164 (5th Cir. 1982).

We hold that Izac failed to demonstrate that he had no reasonable legal alternative to possessing a firearm. When Billek confronted Izac, Billek was at the fence separating Izac's property from Billek's. Izac, however, was inside his home in relative safety. Izac then came onto his deck and observed Billek with a firearm before returning into his house. Once again, Izac was in

5

relative safety. <u>At this point</u>, remaining in his house with the door locked was a reasonable alternative. Izac's testimony that his window panes were thin, that his door was weak, and that Billek had threatened to burn down his house does nothing to make it unreasonable. If Billek had come onto Izac's deck and attempted to break a window or door, remaining in the house may have ceased to be, <u>at that point</u>, a reasonable alternative. However, the defense of justification does not allow Izac to assume that this further escalation would have occurred. <u>Cf. Perrin</u>, 45 F.3d at 875 ("[W]e continue to construe the justification defense for possession of a firearm by a felon very narrowly."). Instead, it requires Izac to show that retreating inside his house was not a reasonable alternative <u>at the time</u> he chose to confront Billek with a firearm. Similarly, Billek's threat to burn down Izac's house did not render retreat into the house unreasonable, given that Billek did not have the means of carrying out this threat when Izac retreated into the house. If Billek had later taken steps toward actually setting the house on fire, remaining in the house may have ceased to be a reasonable alternative <u>at that time</u>.

Accordingly, retreating into, and remaining in, his house was a reasonable alternative available to Izac. Because Izac failed to avail himself of that alternative, to show that he had no time to do so, or to show that it would have been futile to do so, he was

6

not entitled to a justification defense.[1]  Therefore, we do not consider whether the district court erred in excluding Izac's proffered evidence because any error in the exclusion of this evidence would be harmless.  United States v. Armocida, 515 F.2d 49, 55 (3d Cir. 1975) (error committed is harmless where defendant not entitled to defense as a matter of law).

B.

Izac next argues that the district court violated his right to a public trial when it excluded his wife from the courtroom during jury selection.  The record indicates that during jury selection Izac's wife, who was on Izac's witness list, was seated in the courtroom area where the jury venire was to be seated.  On the Government's motion, the district court excluded Mrs. Izac from the courtroom, observing that "a potential witness will not sit among the jurors during jury selection."  J.A. 264.[2]

---

[1]None of the evidence relating to justification which the district court excluded undermines this conclusion.  For example, the district court excluded testimony that Billek had threatened Izac and his wife in the past by coming onto their deck and threatening to kill them while they were in their house.  This testimony does not indicate that remaining in the house would have been futile or that its benefit would have been illusionary.  If anything, it demonstrates that the house provided safety from Billek's threats.

[2]The Government apparently based its motion to exclude Mrs. Izac from the courtroom on Fed. R. Evid. 615, and the district court relied on this rule in granting the motion.  We note that this was inappropriate because Rule 615 does not apply during voir dire.  Nevertheless, because we find that the district court's

7

While a defendant generally has a Sixth Amendment right to a public trial, in certain situations the exclusion of a member of the public can be too trivial to amount to a violation of the Sixth Amendment.  United States v. Perry, 479 F.3d 885, 890 (D.C. Cir. 2007); Braun v. Powell, 227 F.3d 908, 918 (7th Cir. 2000).  Given that the district court excluded Mrs. Izac from the courtroom only to ensure the seating of an impartial jury, that she was subject to exclusion in any event under Rule 615 once the trial began, and that the courtroom otherwise remained open to the public, Izac's Sixth Amendment right to a public trial was not implicated.

C.

Finally, Izac contends that the district court abused its discretion by preventing him from making a "missing witness" argument during closing statements to the jury.  Izac maintains that he should have been permitted to argue that the fact that Billek, who was under subpoena by the Government, did not testify leads to an inference that his testimony would have been unhelpful to the Government.  We disagree with Izac's position.  Billek was identified as a witness by both Izac and the Government, was present in the courthouse under subpoena, and was available to testify.  In these circumstances, Billek cannot be considered a

---

exclusion of Mrs. Izac did not violate Izac's right to a public trial, the district court's misplaced reliance on Rule 615 was harmless.

8

missing witness.  <u>United States v. Brooks</u>, 928 F.2d 1403, 1412 (4th Cir. 1991).  Thus, the district court properly excluded Izac's missing witness argument.

III

Based on the foregoing, the judgment of the district court is <u>AFFIRMED</u>.