## A08A1743. HINDS v. THE STATE.

### (673 SE2d 598)

PHIPPS, Judge.

Ginger Hinds appeals her conviction on two counts of first degree cruelty to children, arising from charges that she and her boyfriend, Donald Carver, physically abused her three-year-old daughter, A. H., and her two-year-old son, J. H. She contends (1) that the evidence was insufficient to support her convictions; (2) that her trial counsel provided ineffective assistance in not pursuing a battered woman syndrome defense to explain her failure to stop Carver from abusing her children; (3) that the trial court erred in preventing her from introducing a videotape of her interacting favorably with her children at a later date; and (4) that the trial court improperly allowed testimony from a Department of Family and Children Services (DFCS) caseworker concerning the caseworker's conversation with Hinds. Finding no merit in any of these contentions, we affirm.

1. Hinds contends that the trial court erred in denying her motion for a directed verdict of acquittal, arguing that there was insufficient evidence to support her conviction. On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict.[1] If a rational trier of fact could have found Hinds guilty of the offense charged beyond a reasonable doubt in accordance with the standard enunciated in *Jackson v. Virginia*,[2] the trial court's denial of her motion for directed verdict of acquittal must be affirmed.[3]

OCGA § 16-5-70 (b) provides: "Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." The required mental state of the defendant may be shown by "the presence of an actual intent to cause the particular harm, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm might result."[4] The

---

[1] *Johnson v. State*, 283 Ga. App. 99 (640 SE2d 644) (2006).

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Gray v. State*, 213 Ga. App. 507, 509 (1) (445 SE2d 328) (1994).

[4] *Kennedy v. State*, 277 Ga. 588, 590 (1) (b) (592 SE2d 830) (2004) (citation, punctuation

defendant's mental state and whether the children experienced cruel or excessive physical or mental pain are peculiarly questions for the jury.[5]

(a) On November 26, 1996, A. H. was admitted to the hospital in an unconscious and unresponsive state. The girl was "extremely cold" and had a core body temperature of 86.4 degrees. Bruising and red marks were observed on A. H.'s neck, chest, abdomen, upper arms, buttocks, hips and thighs. These included a red mark on the girl's chest the size of an adult handprint and a "black and blue baseball size contusion to the right thigh." Some of the marks appeared older than others. A paramedic described A. H.'s condition as "life threatening."

Hinds initially stated that A. H. had suffered a seizure after falling in the bathtub and hitting her head. She next stated that Carver, in her presence, had forced A. H. into a bathtub of cold water to discipline the girl. In contrast, Carver stated that Hinds had put A. H. into the bathtub because the girl had a fever. After regaining consciousness at the hospital, when asked how she got so cold, A. H. answered, "Mommy put ice on my tummy." When asked about her other injuries she responded either that "Mommy or Donnie did it" or that "Mommy and Donnie did it." A few days later, A. H. told a DFCS caseworker that "Donnie" put her in a bathtub of cold water and that her mother had picked up ice and put it on her head. A. H. also stated that she was pushed down into the cold water, that there was ice in the water, and that she screamed when this occurred.

From this evidence, the jury was authorized to find that Hinds acted maliciously in causing A. H. cruel or excessive physical pain herself, or that Hinds was a party to such action by Carver.[6] Either was sufficient for a rational trier of fact to find Hinds guilty of child cruelty to A. H.[7]

(b) En route to the hospital on November 26, Hinds and Carver left J. H. with Carver's brother and the brother's fiancée. While helping J. H. in the bathroom, the fiancée "noticed that his whole lower part of his back was completely black" and that he was "black and blue from his waist down." She observed marks on the boy's legs, lower back, buttocks, and genital area and bruises around his jawbones, and she noticed that he was missing a patch of hair on the back of his head. She brought these injuries to the attention of

---

and emphasis omitted).

[5] Id. at 589 (1) (a); *Ferguson v. State*, 267 Ga. App. 374, 376 (1) (599 SE2d 335) (2004).

[6] See *Delacruz v. State*, 280 Ga. 392, 395-396 (3) (627 SE2d 579) (2006); *Kennedy*, supra at 589-590.

[7] See *Hill v. State*, 282 Ga. App. 743, 745 (2) (639 SE2d 637) (2006); *Porter v. State*, 243 Ga. App. 498, 499 (1) (a) (532 SE2d 407) (2000).

Carver's brother, who contacted Carver at the hospital. While on the telephone with Carver, his brother heard a female voice say "hide the boy." Meanwhile, a police officer at the hospital suspected that Hinds had another child. Hinds, however, initially denied having a son. A DFCS caseworker testified to thinking that Hinds was hiding the boy from the authorities.

Carver's brother and his fiancée brought J. H. to the hospital, where the attending physician and a DFCS caseworker observed numerous injuries to the boy. The physician observed bruises, some older than others, across the boy's legs, buttocks, genitals, abdomen, lower back, neck and face. The caseworker observed bruises in several stages of healing over the boy's entire body; a bald spot the size of a nickel on his head; marks on his neck and bruising on the side of his face; and bruising on his penis. Both the physician and the caseworker expressed the belief that J. H.'s injuries were consistent with physical abuse.

Although Hinds first denied letting Carver discipline the boy, she later stated that Carver had spanked J. H. and had pinched the boy's penis to toilet train him. At trial, she testified that Carver was responsible for J. H.'s injuries. Other trial evidence showed that significant bruising had also been observed on J. H.'s buttocks by a caregiver earlier in the month.

Hinds asserts on appeal that the state presented only circumstantial evidence that she caused the bruising and other injuries to J. H.[8] She contends that Carver, who had been living in her apartment at the time, was responsible for injuring the boy.

> Questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.[9]

Here, the evidence supported a finding that J. H. had sustained significant injuries over a period of time while in Hinds's care. The evidence further supported a finding that Hinds attempted to conceal J. H.'s injuries by leaving the boy with Carver's brother, encouraging the brother to "hide the boy" in a telephone call, and

---

[8] See OCGA § 24-4-6.

[9] *Scott v. State*, 281 Ga. 373, 374-375 (1) (637 SE2d 652) (2006) (citation and punctuation omitted).

initially denying that she had a second child when interviewed by authorities. We find this evidence, together with evidence that Hinds was involved in the abuse of A. H., sufficient to enable a rational trier of fact to find Hinds guilty beyond a reasonable doubt of first degree cruelty to J. H.[10]

2. Hinds contends that she received ineffective assistance of counsel because her trial counsel failed to pursue a battered woman syndrome defense. Specifically, Hinds argues that her defense was prejudiced by counsel's failure to call a psychologist as an expert witness to show that Hinds did not protect her children from Carver because she suffered from battered woman syndrome.

To prevail on a claim of ineffective assistance of counsel, "a defendant must establish, pursuant to *Strickland v. Washington*,[11] that counsel's performance was deficient and that the deficient performance was prejudicial to the defense."[12] We review the trial court's legal conclusions on this issue de novo and its factual findings for abuse of discretion.[13]

At her motion for new trial hearing, Hinds argued that, had the jury heard evidence that Hinds suffered from battered woman syndrome, it could have found that she lacked the requisite intent for the offense. A psychologist retained by defense counsel initially determined that Hinds met the criteria for battered woman syndrome. But at the new trial hearing, this psychologist testified that she failed to receive corroborating information from other sources and thus had not been "entirely comfortable in proceeding with testifying that . . . Hinds fit the battered woman syndrome." Hinds's trial counsel testified that he thus did not call the psychologist as a trial witness. Counsel further testified that he considered having the psychologist testify about how Hinds dealt with Carver's abuse and about post-traumatic stress disorder, but he and Hinds together concluded that, given the psychologist's change in opinion on battered woman syndrome, the testimony would have been more harmful than helpful to Hinds.

These facts are similar to those in *Ballard v. State*,[14] in which counsel chose not to pursue a battered woman syndrome defense after a psychologist hired by the defense concluded that the defendant did not suffer from the syndrome. Given this opinion, counsel,

---

[10] See *Scott*, supra at 375, 377 (1), (3) (finding circumstantial evidence of father's cruelty to child sufficient to support jury verdict despite presence in house at time of child's injury of another adult with history of similar actions toward a child).

[11] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[12] *Espinosa v. State*, 285 Ga. App. 69, 72 (2) (645 SE2d 529) (2007) (footnote omitted).

[13] Id.

[14] 281 Ga. 232 (637 SE2d 401) (2006).

together with the defendant, instead chose to focus on another line of defense. The Court in *Ballard* found no merit to the defendant's claim of ineffective assistance, holding that under these circumstances the defendant had "failed to show that trial counsel's decision not to pursue the defense was either unreasonable or prejudicial to her defense."[15] Likewise, we find no merit in Hinds's claim that counsel's failure to call the psychologist constituted ineffective assistance.

3. Hinds contends that the trial court erred in refusing to allow into evidence a videotape depicting certain of her interactions with the children during a scheduled visitation in January 1998, which Hinds sought to introduce in connection with expert testimony to counter the state's position that the children were afraid of her. After reviewing the videotape, the court determined that it was too remote in time to be of relevance and that it was bolstering and self-serving, and thus refused to admit it into evidence.

The videotape's admissibility was a matter for the trial court's discretion, and we will not reverse the court's ruling unless that discretion was abused.[16] Hinds asserts that the videotape was exculpatory evidence and that its exclusion deprived her of the right discussed in *Crane v. Kentucky*[17] "to have the prosecutor's case encounter and survive the crucible of meaningful adversarial testing."[18] As the videotape was not included in the record on appeal, however, we cannot assess its exculpatory nature. The record does reflect that the videotape depicted selected portions of an event that occurred more than a year after the commission of the crime,[19] and that Hinds's expert witness was allowed to opine that the children's behavior at that later date did not indicate that they feared Hinds or had been victims of long-standing abuse. We find that Hinds has not shown affirmatively from the record that the court abused its discretion in refusing to admit the videotape into evidence.

4. Hinds contends that the court erred in allowing a DFCS caseworker, Patty Sipos, to testify about her interview with Hinds while Hinds was under arrest and in a holding cell awaiting a child deprivation hearing. The state produced Sipos's written report and her notes from the DFCS files in response to Hinds's pre-trial discovery demands. After trial began and as Sipos was preparing to testify, however, she remembered more than what she had written

---

[15] Id. at 233 (2) (footnotes omitted).

[16] See *Jones v. State*, 250 Ga. 498, 499 (3) (299 SE2d 549) (1983).

[17] 476 U. S. 683 (106 SC 2142, 90 LE2d 636) (1986).

[18] Id. at 690-691 (II) (citations and punctuation omitted).

[19] The videotape was filmed by Hinds's mother and depicted portions of a visit between Hinds and the children.

down about her interview with Hinds. Sipos notified the prosecuting attorneys, who in turn made the court and Hinds aware of these additional recollections. We review the court's decision to allow Sipos's testimony for abuse of discretion.[20]

(a) Hinds asserts that the information recalled by Sipos constituted the "statement of a witness" under OCGA § 17-16-1, and that the state thus was required to produce this information prior to trial pursuant to discovery provisions set forth in OCGA § 17-16-1 et seq. Pre-trial discovery provisions require the prosecution to produce no later than ten days before trial "any statement of any witness that is in the possession, custody, or control of the state or prosecution . . . that relates to the subject matter concerning the testimony of the witness."[21] OCGA § 17-16-1 (2) defines "statement of a witness" as:

(A) A written or recorded statement . . . made by the witness that is signed or otherwise adopted or approved by the witness; (B) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and is contained in a . . . recording or a transcription thereof; or (C) A summary of the substance of a statement made by a witness contained in a memorandum, report, or other type of written document.

OCGA § 17-16-1 (3) excludes from this definition a statement made by the defendant.

The information that Hinds asserts she should have received before trial did not involve a written statement, a written summary of a statement, or a contemporaneous recording of a statement by Sipos. Rather, it concerned additional recollections that had not been reduced to writing. These recollections did not constitute a "statement of a witness" under OCGA § 17-16-1 (2), and the state was not obligated to produce this information prior to trial under OCGA § 17-16-7.[22]

(b) Hinds asserts that the holding in *McKenny v. State*[23] precluded Sipos's testimony concerning her additional recollections about her interview of Hinds. *McKenny* involved a violation of former OCGA § 17-7-210, which required the state to produce

---

[20] *Williams v. State*, 226 Ga. App. 313, 314 (1) (485 SE2d 837) (1997).

[21] OCGA § 17-16-7.

[22] See *Cox v. State*, 242 Ga. App. 334, 338 (7) (528 SE2d 871) (2000) ("Because there can be no 'possession, custody, or control' of an oral statement, the State has no obligation to produce a statement which has been neither recorded nor committed to writing.") (citations omitted).

[23] 204 Ga. App. 411 (419 SE2d 731) (1992).

YALE LAW LIBRARY

certain statements made by a defendant. Similar requirements currently exist in OCGA § 17-16-4 (a) (1), which imposes upon the state disclosure requirements for certain of a defendant's statements that are "within the possession, custody, or control of the state or prosecution." But the record shows that the state, upon learning of Sipos's recollections, promptly informed Hinds of them and offered to make Sipos available for interview by Hinds's counsel,[24] and that Hinds had the opportunity at trial to cross-examine Sipos on her failure to include the additional information in her written report. Therefore, even assuming that OCGA § 17-16-4 (a) (1) applied to statements made by Hinds to Sipos during the interview,[25] we find no abuse of discretion in the court's admission of Sipos's testimony under the circumstances.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 13, 2009.

*Louis M. Turchiarelli*, for appellant.
*Patrick H. Head, District Attorney, Amelia G. Pray, Assistant District Attorney*, for appellee.

---

[24] See OCGA § 17-16-4 (c) (requiring party that, prior to or during trial, discovers additional evidence subject to disclosure obligations to promptly notify the other party of its existence and to make such evidence available); *Guild v. State*, 236 Ga. App. 444, 446 (4) (512 SE2d 343) (1999).

[25] The state questions whether a statement made to a DFCS representative in the context of a separate child deprivation hearing, not at the direction of law enforcement, falls within the definition of a statement within the possession, custody, or control of the state or prosecution, as that term is defined under OCGA § 17-16-1 (1). Cf. *Banther v. State*, 182 Ga. App. 333-334 (1) (335 SE2d 709) (1987) (holding, in different context involving *Miranda* rights, that DFCS caseworker is "not a police officer or an agent of the state charged with law enforcement").