310 Ga. 790
FINAL COPY

S20A1120.  SMITH v. THE STATE.

WARREN, Justice.

Appellant Eric Smith was convicted of the felony murder of

Eric Hernandez (Hernandez), the aggravated assaults of Juan

Vargas and Manuel Hernandez, and a firearm offense.[1]  He appeals,

---

[1] These convictions resulted from Smith's third trial on crimes alleged to have occurred on May 23, 2013, and June 15, 2013.  The first two trials ended in mistrials.  It appears that the first trial proceeded under a 2014 indictment, whereas the second and third trials proceeded under an August 2015 indictment by a Clayton Country grand jury.  Count 1 of that indictment alleged that Smith committed an aggravated assault against Hernandez on May 23, 2013.  The remaining counts related to crimes that arose from an altercation that led to the shooting of Hernandez on June 15, 2013: malice murder of Hernandez (Count 2); murder of Hernandez predicated on aggravated assault (Count 3); possession of a firearm during  the commission of felony murder (Count 4); voluntary manslaughter (Count 5); possession of a firearm during the commission of voluntary manslaughter (Count 6); aggravated assault of Hernandez (Count 7); possession of a firearm during the commission of the aggravated assault of Hernandez (Count 8); aggravated assault of Juan Vargas (Count 9); aggravated assault of Paula Hernandez (Count 10); aggravated assault of Manuel Hernandez for firing a gun in his immediate presence (Count 11); and aggravated assault of Manuel for striking him in the face with the gun (Count 12).

On November 9, 2015, at Smith's third trial, the jury found him not guilty of aggravated assault (Count 1), malice murder (Count 2), voluntary manslaughter (Count 5), possession of a firearm during the commission of voluntary manslaughter (Count 6), and two of the aggravated assault counts (Counts 10 and 12), but found him guilty of felony murder (Count 3), possession

contending that the trial court erred in limiting his cross-examination of members of the Hernandez family; in not allowing him to cross-examine a police detective about whether Hernandez was a member of a gang; and in ruling against his claim that his trial counsel was constitutionally ineffective. Concluding that the trial court did not err with regard to the two evidentiary rulings and that Smith failed to preserve the claim of ineffective assistance, we affirm.

1. Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed that Hernandez lived with his wife, Diana, and their two young children; his parents, Manuel and

---

of a firearm during the commission of a felony (Counts 4 and 8), and three aggravated assault counts (Counts 7, 9, and 11). The trial court merged Counts 7 and 8 with other counts for sentencing purposes. On December 4, 2015, Smith was sentenced to serve life in prison with the possibility of parole for felony murder, twenty consecutive years for the aggravated assaults of Juan Vargas and Manuel Hernandez, and five consecutive years for the remaining firearm count (Count 4). On December 29, 2015, Smith filed a motion for new trial. On March 13, 2017, Smith purported to file a pro se amended motion for new trial, alleging ineffective assistance of trial counsel and seeking a court-appointed attorney for his appeal. After receiving new counsel on April 3, 2018, Smith's new counsel filed an amended motion for new trial on September 4, 2019. The trial court denied the motion for new trial, as amended, on October 18, 2019. Smith timely appealed, and the case was docketed in this Court to the August 2020 term and submitted for a decision on the briefs.

Paula Hernandez; and his sister and brother-in-law, Licet and Juan Vargas, and their two young children. The Hernandezes lived next door to Smith. On May 23, 2013, some of the children were playing in the front yard of their home with their grandfather, and one of them repeatedly used a curse word. Smith, who was in his nearby yard playing music and drinking alcohol, became angry with the children. According to a neighbor who witnessed the incident, Smith began "screaming vulgar language at the kids." The neighbor testified that Smith began "waving a gun around" and said, "I told y'all one of y'all going to make me f*** y'all up one day." Hernandez and Diana came out of the house in response to the incident, and Smith told Hernandez to come into his yard and he would "f*** [Hernandez] up."

On the night of June 15, 2013, Hernandez and Diana celebrated their anniversary by sitting outside their house and drinking a few beers. Smith was in his yard, drinking beer and playing music. According to Diana, at about 11:00 p.m., Smith became angry, walked toward them, and began to threaten them.

Vargas and Diana testified that Hernandez and Smith walked toward the street, where Hernandez kicked Smith's truck. A physical altercation ensued. Fighting behind Smith's truck and on the street, neither man could stay on top of the other for long as they rolled around. Vargas, Diana, and Manuel testified that Vargas and Manuel were able to separate the two men and began to walk Hernandez back to the house. As they were doing so, with Smith behind them, they heard a shot fired. Hernandez stated that he had been shot and collapsed shortly thereafter. Smith then aimed his gun toward the Hernandez family and hit Manuel with the gun. Afterward, Smith put the gun in his mailbox. Hernandez died in the hospital of a gunshot wound to the right side of the back. Police later recovered a shell casing from the street, near the curb.

Officers interviewed Smith on the night of the shooting. Smith claimed that Hernandez initiated the altercation, saying that Hernandez "walked down his driveway into the street and then came up [Smith's] driveway and started a fight with him." Smith stated that during the fight, Hernandez's family members "were

4

holding [Smith] down while [Hernandez] was kicking him and punching him." Smith added that he was "curled up" in his yard, "pulled the gun from his waist," and shot Hernandez. When told that an officer had found a shell casing in the street, Smith said that if that were true, then "you know I've been lying to you the whole time."

At trial, Smith testified as follows. On the night of the crimes, Hernandez came into his yard and ran at him full speed, and Smith dodged Hernandez to avoid a confrontation. Hernandez's family was able to restrain Hernandez, but Hernandez got away and attacked Smith again. The two began fighting and rolled down the hill toward the street. Manuel and Vargas then began holding Smith down while Hernandez was "stomping" him. Smith "had to do something" and remembered that he had his gun on him. He "rolled back" from the men attacking him and "got up." He tried to "shoot . . . close to [Hernandez's] . . . left side," but Hernandez "jumped right into" the bullet and "turned back" as he did so.

Smith does not contest the legal sufficiency of the evidence

supporting his convictions. Nevertheless, consistent with this Court's current practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize a rational jury to find Smith guilty beyond a reasonable doubt of the crimes for which he was convicted.[2] See *Jackson v. Virginia*, 443 U.S. 307, 318-319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Smith contends that the trial court violated his right of confrontation by preventing him from cross-examining members of the Hernandez family about their alleged involvement in vandalizing Smith's property after the shooting. Smith argues that cross-examination on this subject was necessary to show the family had a motive — avoiding being viewed by the State as suspects for the vandalism — for testifying favorably for the State. We conclude that this contention is without merit.

---

[2] We remind litigants that the Court will end our practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that began in December 2020. See *Davenport v. State*, 309 Ga. 385, 392, 399 (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

At a pre-trial hearing, the prosecutor acknowledged that Smith's truck was "vandalized" on the day after the shooting and that "at some point over the next three weeks, the defendant's home was vandalized, it wasn't burned to the ground or anything, but there was some fire damage." The prosecutor represented that the State had investigated the vandalism and had found no evidence that the Hernandez family was involved with it. The State thus moved to prevent Smith from questioning the Hernandez family about the vandalism. Smith responded that he had a constitutional right to cross-examine members of the Hernandez family on the subject. The trial court ruled that cross-examination about the vandalism would be admissible only if Smith could first connect members of the Hernandez family to the acts of vandalism and present any such evidence outside the presence of the jury.

We "review a limitation of cross-examination only for an abuse of . . . discretion." *Lucas v. State*, 303 Ga. 134, 137 (810 SE2d 491) (2018). Moreover, the right to inquire into the partiality and bias of witnesses secured by the right of confrontation "'is not an absolute

right that mandates unlimited questioning by the defense,'" and trial courts "'retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, interrogation that is only marginally relevant.'" Id. at 137 (citations omitted). Here, Smith never attempted to offer evidence connecting members of the Hernandez family to the vandalism. He nevertheless speculates that members of the Hernandez family who testified at trial had a motive to bend their testimony in favor of the State: to avoid being "looked at as . . . suspects" for the vandalism of Smith's property. But without any evidence connecting the Hernandez family and the vandalism, Smith offers nothing more than speculation that the Hernandez family had a particular motive to testify favorably for the State. We therefore conclude that the trial court did not abuse its discretion in prohibiting the cross-examination.[3] See, e.g., id. at 140 (holding that the trial court did

---

[3] The State argues that Smith did not properly preserve this claim in the trial court and that we should review it only for plain error as a result. However, we need not decide whether Smith properly preserved the issue because Smith cannot show that the trial court erred even under the more lenient abuse-of-discretion standard.

8

not abuse its discretion in limiting the cross-examination about any favorable sentencing that a State's witness might hope to obtain by testifying favorably for the State because there was no evidence that the witness had been charged in the case or had a deal with the State, making "[a]ny questions about potential sentencing . . . mere speculation"); *Redding v. State*, 296 Ga. 471, 474 (769 SE2d 67) (2015) (holding that the defendant's claim that the trial court improperly curtailed his cross-examination of a state's witness about potential bias was without merit, in part because the defendant offered no evidence to support the basis for the alleged bias).

3. Smith contends that the trial court erred by not allowing him to inquire into Hernandez's possible gang affiliation, arguing that the evidence was relevant to his claim of self-defense because it would have shown that his fear of Hernandez was reasonable. We conclude that the trial court did not abuse its discretion.

At a hearing outside the presence of the jury on the first day of the third trial, the prosecutor noted that Hernandez had a tattoo of

an area code; stated that at Smith's second trial, Smith's counsel questioned a detective about whether such a tattoo indicated gang affiliation; and moved to exclude any evidence regarding the tattoo at the third trial, arguing that evidence of gang membership (if any) was not relevant to the case and would be "pure character assassination." The prosecutor did not make any representation about the detective's testimony at the second trial regarding the meaning of the tattoo, but argued that the detective was not qualified to give testimony about the indicators of gang membership. Smith's counsel responded that at the second trial, the State opened the door to defense counsel's questioning about the tattoo and said that, when he asked the detective at that trial about "area coding" and "gang membership," the detective "didn't say it wasn't" indicative of gang membership. Smith's counsel then commented: "That's always a sign of possible gang membership." The trial court granted the State's motion, ruling that evidence that Hernandez's tattoo indicated he was a member of a gang would be excluded unless the State opened the door to the evidence or unless Smith

could offer evidence linking the tattoo to gang membership.

We review a trial court's evidentiary rulings using an abuse of discretion standard of review. See *Keller v. State*, 308 Ga. 492, 505 (842 SE2d 22) (2020).[4]

Smith cites no authority for his contention that evidence that Hernandez was a gang member would have been relevant to his claim of self-defense. But even assuming for the sake of argument that his contention is correct, we conclude that the trial court did not abuse its discretion here. Cf. *Kilpatrick v. State*, 308 Ga. 194, 197 (839 SE2d 551) (2020) (holding that a "victim's alleged membership in a . . . gang, unknown to Appellant at the time of the shooting, was not relevant or admissible as to Appellant's justification defense and so the trial court did not err in [excluding evidence of the victim's alleged gang membership]. See OCGA §§

---

[4] As with Smith's previous enumeration of error, the State argues that Smith did not properly preserve this claim and that we therefore should review it only for plain error. However, as with the previous enumeration, we need not decide whether Smith properly preserved the issue because Smith cannot show that the trial court erred even under the more lenient abuse-of-discretion standard.

11

24-4-402, 24-4-404 (a)").[5] That is because the trial court laid out a process by which Smith could introduce evidence that Hernandez's tattoo indicated he was a member of a gang. But Smith made no such offer of proof. Indeed, the only references to evidence in this regard were made by the prosecutor and by Smith's counsel at a hearing on the first day of Smith's third trial, as they each recounted questioning that took place during Smith's *second* trial. With regard to that discussion, there was no summary of that prior questioning that constituted a proffer that a witness would testify in a certain way at the third trial or that would otherwise establish a connection between Hernandez's tattoo and gang membership.[6] The trial court thus exercised its discretion to determine that the

---

[5] Whether Smith knew of Hernandez's alleged gang membership was not discussed at trial.

[6] Indeed, it is not even clear from the transcript whether Smith's counsel intended to elicit testimony about the tattoo at the third trial: the prosecutor (not Smith's counsel) raised the issue in the first instance, and it is far from clear that Smith's counsel's comment that area codes are "always a sign of possible gang membership" was something the detective said during the second trial, as opposed to counsel's own opinion. Moreover, Smith's counsel did not argue at the hearing that Hernandez's possible gang membership was relevant to Smith's claim of self-defense.

12

colloquy at the hearing on the first day of trial was not sufficient to show that the tattoo evidence would be relevant. See *McClain v. State*, 303 Ga. 6, 10 (810 SE2d 77) (2018) ("'Decisions regarding relevance are committed to the sound discretion of the trial court.'") (quoting *Smith v. State*, 299 Ga. 424, 429 (788 SE2d 433) (2016)). The court also exercised its discretion by informing Smith that he could revisit the subject at trial if the State opened the door to it, which it did not, or if Smith could offer evidence to connect Hernandez's tattoo to gang membership; he did not do so. We conclude that, based on the record in this case, the trial court did not abuse its discretion by preventing Smith from questioning witnesses at trial regarding a connection between Hernandez's tattoo and his possible gang membership without a specific proffer linking the two.

4. Smith contends that he was denied his right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution when his trial counsel failed to use an investigator to prepare for trial. Smith, however, failed to preserve this claim. First, he did not raise it in his amended motion for new

trial, which was filed when he had new counsel. Additionally, at the hearing on his motion for new trial, Smith asked his trial counsel whether he had employed an investigator and trial counsel responded that he had not — yet Smith made no claim at the hearing that trial counsel was ineffective because of this failure. Finally, the trial court did not rule on any claim that trial counsel was ineffective in failing to hire an investigator. For these reasons, Smith has failed to preserve this claim for review. See *Rickman v. State*, 304 Ga. 61, 66 (816 SE2d 4) (2018) (relying on *Cowart v. State*, 294 Ga. 333 (751 SE2d 399) (2013), to hold that where the ineffectiveness claim raised on appeal was not specifically raised in the motion for new trial or amended motion for new trial and that where, even though there was questioning on the claim at the hearing on the motion for new trial, and even though "the trial court may under some circumstances allow a motion for new trial to be amended implicitly by treating a claim as if it had been raised in the motion," the trial court's failure to address the ineffectiveness claim in its ruling on the motion meant that there was no implicit amendment and that

14

there was "no ruling on the issue for this Court to review") (citation and punctuation omitted).

Moreover, even if this claim had been preserved, it would fail. To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was constitutionally deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

Smith's claim fails on the merits because he has not satisfied the prejudice prong. At the motion for new trial hearing, Smith "did

not present any evidence as to what additional information [an investigator] would have offered or how that evidence would have improved his position." *Lupoe v. State*, 300 Ga. 233, 246 (794 SE2d 67) (2016). Smith "therefore failed to show prejudice on this claim of ineffective assistance." Id. Accord *Hulett v. State*, 296 Ga. 49, 69 (766 SE2d 1) (2014) (holding that the defendant failed to carry his burden to show prejudice on his claim that trial counsel provided ineffective assistance by failing to hire a mitigation specialist because the defendant "presented no evidence in his motion for new trial to show exactly what additional mitigating evidence would have been revealed as the result of hiring a mitigation specialist, much less that such additional evidence in reasonable probability would have persuaded a rational trier of fact to reach a different sentencing verdict").

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 15, 2021.

Murder. Clayton Superior Court. Before Judge Mack.

*Genevieve Holmes*, for appellant.

*Tasha M. Mosley, District Attorney, Elizabeth A. Baker, Karen S. Barbour, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.