**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: October 15, 2024

S24A0692. SUMMERVILLE v. THE STATE.

BETHEL, Justice.

Michael Earl Summerville was convicted of felony murder in connection with the death of Martha West.[1] On appeal, Summerville contends that trial counsel rendered constitutionally ineffective assistance by failing to object to a comment in the State's closing argument and that the trial court abused its discretion by limiting the defense's cross-examination of a witness. For the reasons that

---

[1] The crimes occurred on December 10, 2017. In November 2020, a Wilkes County grand jury indicted Summerville for malice murder, felony murder predicated on aggravated assault, and aggravated assault, family violence. At a jury trial, Summerville was found not guilty of malice murder but guilty of the remaining counts. The trial court sentenced Summerville to serve life in prison for felony murder, and the aggravated assault, family violence count merged for sentencing purposes.

Summerville filed a timely motion for new trial, which he later amended through new counsel. Following a December 2023 hearing, the trial court denied the motion as amended on January 9, 2024. Summerville then filed a timely notice of appeal, and the case was docketed to this Court's April 2024 term and submitted for a decision on the briefs.

follow, we affirm.

1. The evidence presented at trial showed the following. On the day of the crimes, Summerville and West—who were romantic partners—visited the home of their neighbor Johnny Clark, arriving around 6:45 p.m. Though Summerville drank tequila with Clark, West declined any alcoholic beverages and threatened to call the police when Summerville refused to take her home. The couple eventually left but continued arguing outside.

Between 10:00 and 10:30 p.m., Summerville returned in his truck to Clark's home and reported that West had fallen in the field that separated their home from Clark's. Summerville proceeded to "guzzle" some of Clark's tequila from the bottle, after which he drove Clark to the field where they found West deceased.

Summerville then retrieved his nephew from another mobile home nearby. Summerville told his nephew that West had a heart attack and that he had performed CPR. After learning that Summerville had not called for emergency services, Summerville's nephew called 911 and reported that West had a heart attack.

2

However, when Summerville's nephew arrived at the scene, he noticed West "had stuff coming out the side of her mouth" and was lying between tire tracks.

When responding personnel arrived at the scene, they found West deceased, with her glasses and shoes several feet away from her body and tire tracks on each side of West. Summerville's truck was towed from the field to a GBI office and, pursuant to a search warrant, the following signs of a collision were found on the vehicle: a piece of black plastic, resembling a protector shield for the truck's undercarriage, was found in Summerville's toolbox; a spot on the otherwise dirty undercarriage of the truck appeared as if it had been wiped down; and a handprint, positioned with the fingers facing up, was observed low to the ground outside the truck's door.

Investigators also lifted fibers from the underside of the truck, and testing showed those fibers were consistent with fibers from the leggings West was wearing when she died. West's autopsy revealed 71 injuries, including extensive abrasions, rib fractures, and a dislocation of the skull from the spine, which a Georgia Bureau of

Investigation ("GBI") medical examiner determined were consistent with her being struck by a motor vehicle at a high speed.

2. In his first enumeration of error, Summerville contends that his trial counsel rendered constitutionally ineffective assistance. To prevail on this claim, Summerville bears the burden of showing both that counsel's performance was professionally deficient and that he was prejudiced as a result of that deficient performance. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984).

To satisfy the deficiency prong, Summerville "must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in light of prevailing professional norms." *Butler v. State*, 313 Ga. 675, 683 (4) (872 SE2d 722) (2022) (citation and punctuation omitted). And to show prejudice, Summerville must "establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different." Id. If an appellant is unable to satisfy one prong of the *Strickland* test, "it is not

4

incumbent upon this Court to examine the other prong." *Grant v. State*, 305 Ga. 170, 175 (5) (824 SE2d 255) (2019) (citation and punctuation omitted); see also *Bradley v. State*, 318 Ga. 142, 144 (2) (897 SE2d 428) (2024) ("The failure to demonstrate either deficient performance or resulting prejudice is fatal to a claim of ineffective assistance of counsel and obviates the need even to consider the other.").

Summerville argues that trial counsel was ineffective for failing to object during the State's closing argument. Specifically, the analyst who examined the fibers collected from the underside of Summerville's truck testified that the fibers "were consistent with" the leggings West wore at the time of her death. During closing arguments, the prosecutor highlighted evidence that Summerville's truck was involved in a collision and noted in passing that "the hair fibers from Martha's clothing" were found on the vehicle's underside. Pointing to the prosecutor's characterization of "the hair fibers from [West's] clothing," which was not the same as how the analyst described the fibers, Summerville argues that trial counsel should

5

have objected to the prosecutor's argument as improperly conveying the prosecutor's own opinions about the evidence. We do not agree that counsel's performance was deficient.

It is well settled that "a prosecutor is granted wide latitude in the conduct of closing argument, and within that wide latitude, he may comment upon and draw deductions from the evidence presented to the jury." *Walker v. State*, 312 Ga. 232, 240 (4) (c) (862 SE2d 285) (2021) (citation and punctuation omitted). And here, the prosecutor's comment clearly was not a statement of personal opinion but rather a permissible reasonable inference drawn from the trial evidence. As recounted above, the State presented substantial evidence that West died as a result of being struck by Summerville's truck. West's body was found in an open field surrounded by tire tracks; an autopsy showed that her numerous injuries were consistent with being struck by a motor vehicle; and Summerville's truck showed signs of being in a recent collision.

Summerville is correct that the analyst could not testify, as a matter of scientific certainty, that the fibers came from West's

leggings and, thus, was limited to opining that the fibers were "consistent with" West's leggings. But it would be reasonable to infer, in light of the other evidence at trial, that the fibers recovered from the underside of Summerville's truck came from West's clothing. As such, the prosecutor's argument fell "within the bounds of permissible argument" and, thus, was not improper. *Blocker v. State*, 316 Ga. 568, 579 (4) (a) (889 SE2d 824) (2023); see also *Gaston v. State*, 307 Ga. 634, 640 (2) (b) (837 SE2d 808) (2020). Cf. *Jackson v. State*, 301 Ga. 774, 775-776 (3) (804 SE2d 73) (2017) ("While it is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness[,] it is not improper for counsel to urge the jury to draw such a conclusion from the evidence." (citation and punctuation omitted)). And because the prosecutor's argument was not improper, any objection would have been meritless, and "trial counsel's failure to make a meritless objection to the State's closing argument is not evidence of ineffective assistance." *Gaston*, 307 Ga. at 640 (2) (b) (citation and punctuation omitted). This claim of ineffective assistance therefore fails.

3. In his second enumeration of error, Summerville contends that the trial court abused its discretion when it sustained the State's objection and restricted his questioning of the GBI medical examiner who conducted West's autopsy. Specifically, during recross-examination of the medical examiner, Summerville elicited testimony that the medical examiner had been suspended from the GBI Crime Lab for two years and had "entered into an agreement with [the crime lab] to not have any further inappropriate action." When Summerville attempted to probe the issue further, the State objected. Outside the jury's presence, the prosecutor characterized the line of questioning as "character assassination." Summerville countered that the questioning went to the medical examiner's potential bias. Upon further questioning from the trial court, defense counsel elaborated:

> The witness entered into an agreement whereby, according to what I've read, that another inappropriate action would result in termination. That's what was widely reported, and if this witness were to do something for one side or the other that were to shade things and somebody thought it was inappropriate, she could lose her job. And so the entering of a medical examiner's report is

indeterminate and then shading it towards the State makes it seems that perhaps she is biased towards the State.

Defense counsel further argued that the medical examiner's agreement with GBI made the witness biased toward the State because "[t]he GBI, while it claims to be independent, works at the behest of prosecutors . . . ." Defense counsel did not proffer any evidence in support of these assertions, nor did defense counsel seek to question the medical examiner further, outside the jury's presence, to show the trial court what the medical examiner would have testified to regarding her prior disciplinary action. The trial court sustained the State's objection and curtailed Summerville's questioning about the medical examiner's suspension and subsequent disciplinary action, "unless it goes to [the medical examiner's] ability to perform autopsies and her medical experience." The trial court also struck from the record Summerville's question about the medical examiner's prior disciplinary action, as well as the medical examiner's response, and instructed the jury to disregard it. On appeal, Summerville contends

that the trial court denied his right to a thorough and sifting cross-examination of the medical examiner regarding partiality and bias. We disagree.

"The permissible scope of cross-examination is committed to the sound discretion of the trial court, and we review a limitation of the scope of cross-examination only for abuse of discretion." *Nicely v. State*, 291 Ga. 788, 796 (4) (733 SE2d 715) (2012) (citation and punctuation omitted). "That discretion is circumscribed, of course, by our Evidence Code, which provides that the accused is entitled to a 'thorough and sifting cross-examination' of witnesses for the prosecution. OCGA § 24-6-611 (b)." *Lucas v. State*, 303 Ga. 134, 137 (2) (810 SE2d 490) (2018). It is further circumscribed by the Confrontation Clauses of the United States and Georgia Constitutions,[2] "which secure, among other things, the right of the accused to cross-examine the witnesses against him." Id.

Though "this right of cross-examination includes a right to inquire into the partiality and bias of witnesses," that right is not

---

[2] See U.S. Const. Amend. VI; Ga. Const. of 1983, Art. I, Sec. I, Par. XIV.

10

without its limits. Id. Rather, an accused is entitled to a "*reasonable* cross-examination on the relevant issue of whether a witness entertained any belief of personal benefit from testifying favorably for the prosecution." Id. (emphasis in original; citation and punctuation omitted); see also *Howard v. State*, 286 Ga. 222, 225 (2) (686 SE2d 764) (2009) ("[T]he right of cross-examination integral to the Sixth Amendment right of confrontation is not an absolute right that mandates unlimited questioning by the defense." (citation and punctuation omitted)). And trial courts "retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things[,] interrogation that is only marginally relevant." *Nicely*, 291 Ga. at 796 (4) (citation and punctuation omitted). On the record in this case, we cannot say that the trial court abused its discretion by restricting Summerville's cross-examination of the medical examiner. Here, evidence that the medical examiner was disciplined for telling an inappropriate joke and had agreed not to engage in "any further inappropriate action" was, at best, marginally relevant to the issue of the medical

11

examiner's potential bias in favor of the State. But Summerville failed to make the requisite showing that such evidence was meaningfully *probative* of the issue of potential bias. See *Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016) ("Relevance and probative value are related, but distinct, concepts. Relevance is a binary concept—evidence is relevant or it is not—but probative value is relative. Evidence is relevant if it has "*any tendency*" to prove or disprove a fact, whereas the probative value of evidence derives in large part from the *extent to which* the evidence tends to make the existence of a fact more or less probable. . . . [T]he extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered." (emphasis in original)).

In arguing before the trial court that he should be able to cross-examine the medical examiner about the prior disciplinary action for the purpose of showing bias, Summerville did not seek to proffer *evidence* from which the trial court could find a connection between

the disciplinary action and any motivation on the part of the medical examiner to testify favorably to the State. Instead, Summerville offered only *argument* in support of this line of questioning. To that end, trial counsel vaguely referenced "what [she had] read" and "what was widely reported" about the disciplinary action and speculated that the medical examiner, by virtue of her employment with the GBI, was biased toward both the GBI and the State. These arguments, unsupported by a proffer of evidence, were insufficient to establish that testimony about the medical examiner's disciplinary action was related to and thus probative of the issue of her potential bias for the State. See *Smith v. State*, 310 Ga. 790, 793 (2) (854 SE2d 721) (2021) (no abuse of discretion in restricting cross-examination of State's witnesses about their potential involvement in other crimes as a motive to testify favorably for the State where appellant offered no evidence to support basis for alleged bias); *Jones v. State*, 305 Ga. 653, 655-656 (2) (827 SE2d 254) (2019) (holding that trial court did not abuse its discretion in restricting cross-examination of witness about potential bias for the State

arising from prior first-offender plea where appellant "made no proffer explaining a relationship between [the witness's plea] and her testimony in his case").

By contrast, evidence of the prior disciplinary action, as the State emphasized to the trial court, could have impugned the medical examiner's character, and it certainly carried the potential to prejudice jurors against her. See *Lucas*, 303 Ga. at 138-139 (2); *Johnson v. State*, 316 Ga. 672, 685 (5) (89 SE2d 914) (2023) ("[A] defendant does not have carte blanche to question a witness on issues of marginal relevance that are intended primarily to impugn the witness's character or motives."). See also OCGA § 24-4-403 ("Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."); OCGA § 24-6-611 (a) (3) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . [p]rotect witnesses from harassment or undue embarrassment."). In sum, on the record before us, we cannot say that the trial court abused its discretion by limiting cross-

examination about the medical examiner's prior disciplinary action, and this claim fails.

*Judgment affirmed. All the Justices concur.*