**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: March 17, 2026

S26A0053. HERNANDEZ v. THE STATE.

PINSON, Justice.

Gustavo Hernandez was convicted of malice murder and other crimes related to the shooting of Daniel Perez.[1] On appeal, Hernan-

---

[1] Perez was shot on March 23, 2018, and died a few days later. A Cobb County grand jury returned a joint indictment charging Hernandez and four others with several crimes related to the shooting. As relevant here, Hernandez was charged with malice murder, three counts of felony murder, aggravated assault, criminal attempt to commit a felony (armed robbery), conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony. He was tried alone by a jury on August 23 to 27, 2021. The jury found him guilty of all counts. On September 1, 2021, the trial court sentenced him to life in prison for malice murder, a consecutive sentence of 10 years in prison for conspiracy to commit armed robbery, and a consecutive five years in prison for possession of a firearm during the commission of a felony; the felony murder charges were vacated by operation of law, the aggravated assault charge merged with the charge of malice murder, and the charge of criminal attempt to commit a felony merged with the charge of conspiracy to commit armed robbery. Hernandez timely filed a motion for new trial through his trial counsel on the same day he was sentenced. Hernandez later changed counsel, and on February 7, 2025, he filed an amended motion for new trial, which raised claims that trial counsel was ineffective. After a hearing on March 26, 2025, the trial court denied the motion for new trial on April 10, 2025, and

dez contends that his trial counsel rendered constitutionally ineffective assistance by failing to object to several arguments made by the State in closing. For the reasons that follow, Hernandez has not established that counsel's performance was deficient, so his claims fail and his convictions and sentences are therefore affirmed.

1. The evidence at trial showed the following. On March 23, 2018, Hernandez, Charlton Kariuki, and Devin Thomas discussed robbing someone. Thomas then sent a message to Perez on social media about an opportunity to sell a "good amount" of marijuana. Perez showed the message to his girlfriend, who thought this proposal was "fishy" because Thomas had once set up Perez with a purported buyer who stole five- or six-hundred-dollars' worth of marijuana from Perez.

Dismissing his girlfriend's concerns, Perez asked his brother, Ricky Perez, to give him a ride and put a location into his GPS. Ricky drove, following the GPS directions until Perez told him to take a

Hernandez timely filed a notice of appeal on the next day. His appeal was docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

right into a parking lot across from North Cobb High School instead. Ricky turned into the lot and parked. Someone approached their truck and spoke to Perez through the open passenger-side window. Someone else then came toward the truck and shot Perez through the open window. Ricky had been looking at his phone and "barely" saw the shooter, but he testified that it looked like the shooter was trying to take something from Perez and then ran away.

Ricky called 911, and Perez was taken to the hospital. He died three days later from complications related to a gunshot wound to his head.

After the shooting, Perez's girlfriend told the police about the social media messages Perez had exchanged with Thomas that day and identified Thomas in a photo. Someone else also contacted the police and told them that Thomas may have been involved in the shooting.

Thomas was taken into custody, and Maria Mungai, who lived with Thomas and was with him at the time of his arrest, was

brought in for questioning. Investigators read Mungai her *Miranda*[2] rights, and she agreed to speak with them. At first Mungai said the incident with Perez was a "drug transaction," but then "she changed her story and said that it was basically a robbery that had gone wrong." She identified Hernandez, Brittani Driver (Hernandez's sister), Thomas, and Kariuki as the people involved.

Thomas, Kariuki, Driver, and Mungai were all jointly indicted with Hernandez. Driver, Kariuki, and Mungai testified at Hernandez's trial pursuant to plea agreements with the State.

Kariuki testified that Thomas told him that he wanted to rob three people in different places, and that "it should be quick … get it and go." Kariuki then drove Hernandez, Thomas, Driver, and Mungai to a spot near North Cobb High School. According to Kariuki, Thomas got out of the car, and Driver, Hernandez, and Mungai remained with Kariuki, who drove around the area until he found a parking spot and parked. Kariuki testified that "a couple seconds, minutes [went] by" and then Hernandez said he wanted to get out of

---

[2] *Miranda v. Arizona*, 384 US 436 (1966).

the car to urinate. Hernandez then got out of the car and said he would "be right back." But according to Driver, Thomas and Hernandez got out of the car together and walked away. And according to Mungai, Driver told Kariuki where to park and told Thomas to go in one direction and Hernandez to go in another direction when they got out of the car together.

Kariuki testified that, soon after Hernandez got out of the car, he heard a "loud boom" that sounded like a gunshot and everyone in the car started "panicking." Kariuki said that Driver wanted to get out of the car and see what had happened, but he stopped her. They waited "a couple minutes," and then Kariuki saw Thomas and Hernandez "running down the street," "put the car in gear," and drove to them. Driver testified that Thomas and Hernandez had been "gone for a couple minutes" when she heard what sounded like a gunshot, and then Thomas and Hernandez "came running back to the car." Mungai testified that she heard a gunshot less than a minute after Hernandez and Thomas got out of the car. Soon after that, she saw Thomas and Hernandez "running back towards the car."

5

Kariuki testified that, after Hernandez and Thomas got back inside the car, Hernandez said, "I shot him, I shot him. Bro, I shot him in the head. I shot him. I didn't mean to. I shot him." And Thomas said, "He shot him, he shot him. I didn't even get the weed yet." Driver testified that Hernandez said, "I think I just shot him in the head." She also said that Hernandez was "panicking" and "couldn't believe what he had done." Mungai testified that Hernandez said, "I just shot that 'N word' in the head."

After the shooting, Kariuki drove Hernandez and Driver to their home. Kariuki and Driver both testified that Hernandez had a gun with him on the day of the shooting. Kariuki testified that he had recently bought a gun for himself, and then he sold it to Hernandez. The day after the shooting, Kariuki drove Hernandez, Thomas, and Mungai to a park near the Chattahoochee River, and Hernandez threw the gun he had bought from Kariuki into the river.

When the police arrested Hernandez, they also executed a search warrant at his home. During the search, investigators found a store receipt for ammunition that matched the caliber of the bullet

collected at the crime scene. Surveillance footage from that store showed Kariuki, Thomas, Mungai, and Hernandez shopping. Kariuki testified that he bought ammunition that day (because he was the only one old enough to do so) and gave it to Hernandez.

2. Hernandez claims on appeal that his trial counsel was ineffective for not objecting to several points in the State's closing argument. To prevail on a claim of ineffective assistance of counsel, a defendant must show that his trial counsel performed deficiently and that he was prejudiced by counsel's deficient performance. See *Strickland v. Washington*, 466 US 668, 687 (1984). To show deficiency, he must establish that counsel performed "in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms." *Robinson v. State*, 323 Ga. 7, 14 (2025) (quotation marks omitted). And to establish prejudice, he "must show that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different." Id. (quotation marks omitted).

With respect to closing arguments, "[p]rosecutors are generally

7

given wide latitude to rebut closing arguments made by the defense." Id. at 19. Moreover, such arguments must be evaluated in context, not in isolation. See *Thompson v. State*, 318 Ga. 760, 767 (2024). Defense counsel's decision about whether to object to any specific point made in closing is a tactical one, so the decision to not object is not deficient performance unless it is "patently unreasonable." Id. at 767–68 (quotation marks omitted).

Hernandez points to several specific statements the prosecutor made in closing and contends that his trial counsel was ineffective for not objecting to each of them. We address the challenged statements in turn.

(a) Hernandez contends that trial counsel should have objected to the prosecutor's argument that Hernandez's co-defendants "told the truth" because they were improper comments on the veracity of these witnesses. As discussed above, three of Hernandez's co-defendants testified at his trial pursuant to plea deals with the State, and each testified that the plea deal required him or her to tell the truth.

Hernandez has not shown that his trial counsel rendered deficient performance by not objecting to these statements because they were not improper comments on the veracity of witnesses. Although it is improper for a prosecutor to express a personal opinion about the credibility of a witness, see *Washington v. State*, 320 Ga. 839, 858 (2025), that did not happen here. Instead, when read in context, the record shows that the prosecutor's statements in closing summarized the evidence that, as part of the plea deals entered into with the State, the three co-defendants agreed to "tell the truth," and the prosecutor's argument that there "wasn't any evidence presented that the co-defendants were lying" responded directly to defense counsel's own argument that they had lied. Both are permissible subjects in closing argument. See *Robinson*, 323 Ga. at 19–20. And at no point did the prosecutor offer his personal opinion about the truthfulness of the co-defendants' testimony. Cf. *Washington*, 320 Ga. at 858–59 (defense counsel was not deficient for failing to object to the prosecutor's comments about witnesses' credibility to the extent they were arguments about "reasonable inferences" that the

jury could draw from the evidence and the witnesses' demeanor, whereas defense counsel had "reasonable grounds for objecting" when the prosecutor expressed a personal opinion about their truthfulness, "namely, the prosecutor's comment that 'I think' [certain witnesses] were credible"). So any objection to the statements would have failed, and trial counsel is not deficient for failing to raise a meritless objection. See *Summerville v. State*, 320 Ga. 60, 62 (2024).

(b) Hernandez contends that trial counsel should have objected to "facts not in evidence" when the prosecutor referred to the September 11, 2001, terrorist attacks during closing argument. The record shows that the references to September 11th were part of an extended analogy, apparently prompted by the upcoming 20-year anniversary of the attacks. (Closing arguments occurred in late August 2021). The prosecutor referred to how "there's a lot that [he] can't remember" about September 11, 2001, but "what matters is that the towers got hit" and "[t]hat's the important part." And he compared this concept to the co-defendants' testimony at trial, arguing that their testimony that Hernandez "jumps back in the car and

10

says: I shot that guy in the head" was "the important part ... that sticks out to all of [the co-defendants]," which was "why they all can remember it consistently," notwithstanding other differences in their accounts.

Hernandez has not established that counsel rendered deficient performance by failing to object to the prosecutor's analogy. See *Arnold v. State*, 309 Ga. 573, 577 (2020). Trial counsel's decision not to object was not objectively unreasonable because, in context, the analogy was a permissible one made to explain how differences in the co-defendants' memories of the shooting fit within the concept of reasonable doubt. See id. (prosecutors in closing argument can make illustrations and draw analogies that have some basis in the evidence). See also *Thompson*, 318 Ga. at 767–68. Because this argument was not improper, an objection to it would have failed, and it is not unreasonable for counsel to fail to make a meritless objection. See *Summerville*, 320 Ga. at 62.

(c) Hernandez claims that trial counsel should have objected when the prosecutor, in explaining reasonable doubt, referred to

11

how another judge had explained reasonable doubt as "your walk-ing-around common sense" and urged the jurors not to "leave your common sense at the door" when evaluating the evidence. Hernan-dez now contends that this statement argued facts not in evidence and was a misstatement of the law. The trial court later instructed the jury, in relevant part, that "[a] reasonable doubt is a doubt based upon common sense and reason."

Hernandez has not established that counsel rendered deficient performance. The prosecutor did not refer to any evidence outside of the record, so any objection to "facts not in evidence" would have been overruled, and failing to make a meritless objection is not defi-cient performance. Compare *Adams v. State*, 283 Ga. 298, 303 (2008) (prosecutor's argument about his method of preparing witnesses for trial "did not put forth any facts not in evidence, or inform the jury that facts existed in this case outside the record") with *High v. Zant*, 250 Ga. 693, 700–01 (1983) (prosecutor's reference to portions of de-fendant's incriminating statement that was not admitted into evi-dence was "an impermissible introduction of facts not in evidence,

12

as distinguished from false logic or rhetoric"). And Hernandez has not established that counsel's failure to object to this argument as a misstatement of the reasonable doubt standard was "patently un-reasonable." *Thompson*, 318 Ga. at 767–68. The prosecutor's brief mention of "common sense" in relation to that standard was not an obvious misstatement of the law, and it in fact highlighted part of the trial court's instructions to the jury, which explained that reasonable doubt "is a doubt based upon common[ ] sense and reason."[3] Moreover, even if such an objection would have had merit, a reasonable lawyer could have decided to rely on his own closing argument

---

[3] In full, the trial court instructed the jury that reasonable doubt is:

just what it says. A reasonable doubt is a doubt of a fair-minded, impartial juror honestly seeking the truth. A reasonable doubt is a doubt based upon common[ ] sense and reason. It does not mean a vague or arbitrary doubt, but is a doubt for which a reason can be given, arising from a consideration of the evidence, a lack of ev-idence, or a conflict in the evidence. After giving consideration to all of the facts and circumstances of this case, if your minds are wavering, unsettled, or unsatisfied, then that is a doubt of the law and you must acquit the defendant. But if that doubt does not exist in your minds as to the guilt of the accused, then you would be authorized to convict the defendant. If the State fails to prove the defendant's guilt beyond a reasonable doubt, it would be your duty to acquit the defendant.

and the trial court's thorough charge on reasonable doubt "rather than make an objection of questionable merit," particularly given the broad latitude afforded to counsel in closing arguments. *Faulkner v. State*, 295 Ga. 321, 326–27 (2014) (rejecting ineffective assistance claim and concluding trial counsel's performance was not deficient because even if an objection to the prosecutor's argument as "an implicit misstatement of the law" may have had "some merit," defendant did not ask trial counsel about the decision not to object at the motion for new trial hearing and "[a] reasonable lawyer might well have decided that, rather than make an objection of questionable merit, she would rely on her own closing argument … and on the trial court's thorough charge" on the relevant law); *Moulder v. State*, 317 Ga. 43, 54–55 (2023) (rejecting ineffective assistance claim that defense counsel's argument that the jury should find the defendant guilty "if your heart of hearts says he did it" was a misstatement of the law on reasonable doubt because "counsel used the phrases at issue to emphasize the lack of evidence presented by the State,

14

knowing that the trial court would instruct the jury on the legal definition of reasonable doubt" and thus counsel's performance was not deficient (emphasis omitted)).

(d) Hernandez contends that trial counsel should have objected to the prosecutor's closing arguments encouraging the jury to "send a message" and "render a verdict for [Perez's] family" because that is not the jury's responsibility as factfinder.

Hernandez has not established that counsel rendered deficient performance by failing to object to these statements. "It is not improper for a prosecutor to argue that a jury should send a message to the community by convicting a defendant" so long as the prosecutor does not "invite the jury to decide the case on anything except whether the evidence adduced at trial shows the defendant's guilt beyond a reasonable doubt." *Arnold*, 309 Ga. at 580–81. Read in context, the prosecutor was responding to defense counsel's own argument — that "[s]ometimes people will hear from lawyers in closing arguments that you need to send a message," but it was not the jury's job to "send messages" — when the prosecutor asked the jury

15

to "send a message" and "render a verdict for [Perez's] family." Because this argument was in direct response to defense counsel, and it came after the prosecutor had already explained the reasonable doubt standard, as discussed above, it was not improper. See id.; *Robinson*, 323 Ga. at 19–20. So it was not unreasonable for counsel not to make this meritless objection. See *Summerville*, 320 Ga. at 62.

*

In sum, Hernandez has failed to establish that his trial counsel performed deficiently by not objecting to any of the challenged closing arguments by the prosecutor, so his claims of ineffective assistance of counsel fail. See *Strickland*, 466 US at 687; *Robinson*, 323 Ga. at 14.

3. Finally, Hernandez contends that he suffered cumulative prejudice from trial counsel's failure to object to each of the statements discussed above. But because we conclude that counsel did not perform deficiently in any respect raised by Hernandez, there are no errors to assess cumulatively, and this claim fails. See *Moss*

16

*v. State*, 322 Ga. 757, 769 (2025).

*Judgment affirmed. All the Justices concur.*